J-A01045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: V.M.W., JR., L.R.W. AND N.T.W., MINORS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: V.W. A/K/A V.T.W., FATHER | No. 1229 EDA 2015 |

Appeal from the Decree March 24, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000596-2014,
CP-51-AP-0000597-2014, CP-51-AP-0000598-2014,
CP-51-FN-004719-2011

BEFORE: LAZARUS, J., OTT, J., and STEVENS, P.J.E.*

MEMORANDUM BY LAZARUS, J.:                    **FILED FEBRUARY 10, 2016**

V.W. (Father) appeals from the decrees[1] involuntarily terminating[2] his

parental rights to his children, V.M.W., Jr. (born June 2010), L.R.W. (born

---

[1] We recognize that Father filed one notice of appeal from three separate trial court decrees terminating parental rights to Children. Each decree was entered on March 24, 2015, at the conclusion of termination proceedings relating to his three children, V.M.W., Jr., L.R.W. and N.T.W. The decrees differ only as to the name of each child and the docket number of the corresponding case for each child. We see no error in this procedure where timeliness is not at issue and where this Court would have most likely consolidated the cases were they separately appealed. *See* Pa.R.A.P. 513 (where there is more than one appeal from same order, or where same question is involved in two or more appeals in different cases, appellate court may order them to be heard together).

[2] We note that:

> [i]n a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for

*(Footnote Continued Next Page)*

*Former Justice specially assigned to the Superior Court.

July 2011) and N.T.W. (born April 2013) (collectively Children).[3]   After

careful review, we affirm.

The trial court aptly summarized the facts leading to Children's

dependency and placement as follows:

> On December 11, 2011, [Philadelphia Department of Human Services] DHS received a Child Protective [S]ervices ("CPS") report alleging that [L.R.W.] sustained a fractured rib and was admitted to the Children's Hospital of Philadelphia ("CHOP").  The date in which [L.R.W.]'s injury occurred was unknown and no perpetrator was identified. The CPS report alleged that [L.R.W.]'s parents took her to the hospital due to a fever and cough. A chest X-ray revealed that [L.R.W.] had a left rib fracture.  L.R.W. was underweight and diagnosed with failure to thrive, but the cause of [L.R.W.]'s failure to thrive was unclear. During hospitalization, [L.R.W.] gained weight.  On December 21, 2011, [L.R.W.] was ready for discharge.  On the same day, DHS obtained an Order for Protective Custody ("OPC") for [L.R.W.].  On December 22, 2011, [L.R.W.] was placed in foster care [through] Bethanna. On January 10, 2012,

*(Footnote Continued)* —————————

> doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."  It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

***In re Adoption of S.M.***, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted).  ***See also In C.P.***, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S. § 2511(a) exists and that termination promotes emotional needs and welfare of child set forth in 23 Pa.C.S. § 2511(b)).

[3] M.R.R. (Mother) has not appealed the decrees terminating her parental rights to Children.

[L.R.W.] was adjudicated dependent and committed to DHS. On January 18, 2012, In-Home Protective Services ("IHPS") were placed in the family home thru Presbyterian Children's village. On January 20, 2012, an initial Family Service Plan was developed. Father's objectives were: to meet with the Bethanna agency on a bi-weekly basis to understand how his behavior/neglect resulted in injury to [L.R.W.]; to locate and maintain suitable housing for the family with suitable space, heat and all other operable utilities; to provide [L.R.W.] with regular nutrit[ious] meals; and to make sure [L.R.W.] was properly clothed. Father signed the FSP. On May 31, 2012, at another FSP meeting, the objectives for Father remained the same. Again, Father signed the FSP and attended the meeting. On January 8, 2013, Father was found in full compliance with his FSP objectives and the trial court ordered that after Father's three successful overnight visits reunification with [L.R.W.] could take place. On January 25, 2013, [L.R.W.] was reunified with her parents with supervision.

On March 23, 2013, DHS received a CPS report alleging that Father hit [V.M.W., Jr.,] who was two years old at the time. [V.M.W., Jr.] had welts on his thighs and legs. [V.M.W., Jr.] also had bruises on his arms and his eye appeared to be swollen. Father was one of [V.M.W., Jr.]'s primary caregivers. On March 27, 2013, Father admitted using physical methods of discipline and that he also hit L.R.W. three days earlier. Mother was present at the time of the incident. DHS escorted [V.M.W., Jr.] and parents to CHOP, where a medical evaluation revealed handprints on [V.M.W., Jr.'s] thighs. Subsequently, DHS obtained an OPC for [L.R.W.] and [V.M.W., Jr.,] and placed them in the care of paternal grandmother where they currently remain. On March 28, 2013, at the Shelter Care hearing, [V.M.W., Jr.]'s OPC was lifted and the temporary commitment was ordered to stand. As to L.R.W., the OPC was lifted and the temporary commitment to OHS was discharged. L.R.W. was recommitted to DHS. On April 9, 2013, [V.M.W., Jr.] was adjudicated dependent, placed in foster care with paternal grandmother and his legal custody was [temporarily] transferred to DHS. The trial court also ordered Father to have supervised visits with [L.M.W.] and [V.M.W., Jr.].

On April 16, 2013, Mother gave birth to a third Child. DHS implemented a safety plan at the family home. Father agreed not to act dangerously or violently towards [N.T.W.]. On April 24, 2013, Father was arrested and charged with aggravated assault, unlawful restraint, serious bodily injury, endangering of

welfare of [c]hildren, simple assault and recklessly endangering another person. On April 25, 2013, the criminal court issued a stay away order. On April 26, 2013, a revised FSP was developed for the family. Father's objectives were: to maintain suitable housing; to participate in a parenting capacity evaluation and follow all the recommendations; to attend domestic violence counseling; to keep visits and maintain regular contact with the Children; to maintain regular contact with the provider agency and understand how his behavior resulted in injury to his Children; to attend ARC [for] key support areas identified for mental health; to attend family school and to follow recommendations; and to attend anger management. Father attended and signed the FSP. On May 1, 2013, Father posted a [sic] bail and was released from prison.

On May 21, 2013, DHS obtained an OPC for [N.T.W.]. At the Shelter Care [H]earing, the OPC was lifted and temporary commitment ordered to stand. On June 4, 2013, the trial court adjudicated [N.T.W.] dependent. At the same hearing, the trial court ordered Father to have supervised visits, if the criminal court stay away order is lifted. On July 9, 2013, at a permanency review hearing, Father was found minimally compliant with his FSP objectives. Children remained in foster care with paternal grandmother. On August 19, 2013 a revised FSP was developed. Father attended and signed the FSP. Father's objectives remained the same. On October 8, 2013, at a permanency review hearing, Father was found minimally compliant with his FSP. Children continued in foster care with paternal grandmother. The trial court found that Father was attending anger management at ARC and had a psychological evaluation. Father was re-referred to domestic violence, and to the CEU for a drug screen and assessment. Father completed his Parenting Capacity Evaluation. The report noted that Father denied any responsibility for his Children injuries or history of domestic violence, and any pending criminal charges. Father did not demonstrate ability to provide safety for his Children. The report also stated that in order to be reunified with his Children, Father would need to explore and identify the role he played in his Children injuries. . . . The trial court ordered that Father's visits must remain suspended until further order of the criminal court lifting the stay away order. On October 10, 2013, Father [pled] guilty to endangering the welfare of children and simple assault against a victim under 12 years of age. The criminal court ordered Father to have no contact with minors under 10 years of age, and DHS to supervise any [] contact with minors. .

. . On December 20, 2013, a revised FSP was developed. Father attended the FSP meeting and signed the FSP. The following additional objectives were added to Father's FSP: to comply with all treatment recommendation of CEU; to sign authorization forms allowing DHS to obtain copies of evaluations and progress reports; to continue with mental health treatment and [to] meet with a psychiatrist on a monthly basis.

In February 2014, the criminal court lifted the stay away order. On February, 11, 2014, at a permanency review hearing, Father was found in moderate compliance with his FSP. Children remained in foster care with paternal grandmother. Father was ordered to have supervised visits with the Children at Family School. Father was re-referred to BHS for monitoring and ordered to attend Family School. Father was also re-referred to therapy to address domestic violence issues. On June 25, 2014, the FSP goal was changed to adoption. On August 11, 2014, at a permanency review hearing, Father was found to be in full compliance with his FSP. Father had suitable housing, signed releases, was attending Family School and was receiving mental health treatment. The court found that Father did not need more D&A treatment. . . . Family Support Services Report recommended Father to continue to attend Family School on a weekly basis. However, Father['s] attendance at Family School declined after August 11, 2014. . . . Children remained in foster care with paternal grandmother. Father was ordered to have visits with the Children once weekly at Family School. Consortium was ordered to provide DHS with Father's progress reports and treatment plans within thirty days.

Trial Court Opinion, 6/25/15, at 1-4.

On November 6, 2014, DHS filed petitions to involuntarily terminate Father's parental rights to Children, pursuant to sections 2511(a)(1), (2), (5), (8), and (b). On March 24, 2015, the court held a termination hearing where DHS presented the testimony of a social worker, paternal grandfather, and a social worker. Father testified on his own behalf at the hearing. At the conclusion of the hearing, the court entered three separate

- 5 -

decrees involuntarily terminating Father's parental rights to each of the Children. This timely appeal followed.

On appeal, Father presents the following issues for our consideration:

(1)  Did the court below err in failing to find that reasonable efforts were not made to reunify Father with his children, V.W., Jr., L.W., and N.W.?

(2)  Did the court below err in finding that DHS had met its burden in proving grounds under 23 Pa.C.S.A. §2511(a)(1), (2), (5) and (8)?

(3)  Did the court below err in finding that DHS had met its burden to prove that termination would be in the children's best interests, under 2511(b)?

(4)  Did the court below err in denying Due Process of Law to Appellant V.W., Father, as guaranteed by the Constitution of the United States and of the Commonwealth of Pennsylvania?

We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. *In re A.R.*, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to determining whether the trial court's order is supported by competent evidence. *Id.*

Father first asserts that DHS did not make reasonable efforts to reunify him with Children prior to filing its termination petitions. He contends that the criminal court failed to provide a reason for barring his visits with Children and that, as a result of its stay-away order, the court erected a barrier which protracted the case and delayed permanency. We disagree.

In *In re D.C.D.*, 105 A.3d 662 (Pa. 2014), our Supreme Court acknowledged that neither subsection (a) nor (b) of the Adoption Act[4] requires a court to consider the reasonable efforts provided to a parent prior to terminating parental rights. *Id.* at 672. However, the Court noted that the "provision or absence of reasonable efforts may be relevant to a court's consideration of both the grounds for termination and the best interest of the child." *Id.*

Instantly, Father fails to acknowledge that his repeated, physical abuse of Children precipitated the criminal court's stay-away order. Father is to blame for his actions which led to his limited visitation with Children, and, in turn, caused a delay in permanency and the ultimate filing of the termination petitions. DHS is not to blame for Father's failure to reunify with Children. Suspending visitation, based on a concern for a child's safety, is a distinct issue and does not call into question DHS's efforts to provide services to Father.

With regard to whether termination was proper under sections 2511 (a) and (b), we rely upon the well-reasoned and thorough opinion authored by the Honorable Joseph L. Fernandes in affirming the termination decrees. As Judge Fernandes found with regard to subsection 2511(a): (1) Father's attendance at Family School has been inconsistent at best; (2) due to the criminal court's stay-away order, Father was unable to establish any direct

_____

[4] 23 Pa.C.S. §§ 2101-2910.

contact with Children from 4/13-2/14; (3) during the stay-away period, Father did not send letters or cards to Children or ask caseworkers about their well-being; (4) Father continues to fail to understand how his abusive behavior resulted in Children's injuries;[5] (5) Father denied a history of domestic violence and any responsibility for pending criminal charges; (6) Father failed to provide DHS with documentation verifying his compliance with services provided to him to complete his Family Service Plan (FSP) goals, N.T. Termination Hearing, 3/24/14, at 39; (7) Children have been in foster care for almost three years which is most or all of their young lives; (8) Father is not a safe and appropriate resource for Children, having pled guilty to endangering the welfare of children and simple assault against V.M.W., Jr.; and (9) Father will remain on probation until October 2016, with a condition that he have no unsupervised contact with minors aged 10 or younger.

With regard to subsection 2511(b), the court found the following: (1) Children have been living with foster parents, their paternal grandparents, who provide them with a safe and stable environment that attends to their needs; (2) they have resided with paternal grandparents, a pre-adoptive

---

[5] Despite the fact that Father testified at the termination hearing that he understands the effect that his behavior has had on his Children, N.T. Termination Hearing, 3/24/14, at 45, we note that pursuant to 23 Pa.C.S. § 2511(b), "[w]ith respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition."

resource, for almost three years; (3) a DHS witness testified there is no positive parental bond between Father and Children, N.T. Termination Hearing, 3/24/14, at 35; (4) termination is in Children's best interest, *id.* at 27; (5) Children will not suffer any irreparable harm if Father's rights are terminated, *id.*; and (6) Children need permanency.

We, therefore, rely upon Judge Fernandes' opinion, in affirming the termination decrees, for Father's second and third issues on appeal. We advise the parties to attach his decision in the event of further proceedings in the matter.

With regard to Father's final claim that he was deprived of his right to due process and equal protection, we likewise find no merit to this issue. Not only does Father fail to give any concrete examples of how "the trial court necessarily violated his fundamental rights," Appellant's Brief, at 11, but the record amply supports the fact that Father was given notice and a full hearing to defend the petitions to terminate filed against him. ***See In re Adoption of Dale A.***, 683 A.2d 297 (Pa. Super. 1996) (no denial of due process and equal protection where Father had access to court's termination proceeding with appointed attorney that cross-examined witnesses).

Decrees affirmed.[6]

_____

[6] We can affirm the trial court's decision regarding the termination of parental rights with regard to any singular subsection of section 2511(a). ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/10/2016

IN THE COURT OF COMMON PLEAS    *CP-51-AP-0000596-2014*
FOR THE COUNTY OF PHILADELPHIA   *CP-51-AP-0000597-2014*
FAMILY COURT DIVISION    *CP-51-AP-0000598-2014*

In re: In the Interest of L.Q.W., V.M.W., and N.T.W.   : ~~CP-51-DP-0002514-2011~~
   : ~~CP-51-DP-0000637-2013~~
   : ~~CP-51-DP-0001059-2013~~
   :
   : 51-FN-004719-2011
APPEAL OF: V.W. Father    :
   : 1229 EDA 2014

**OPINION**

**Fernandes, J.:**

Appellant V.W., ("Father"), appeals from the order entered on March 24, 2015, granting the petition filed by the Department of Human Services of Philadelphia County ("DHS"), to involuntarily terminate Father's parental rights to L.Q.W. ("Child 1"), V.M.W. ("Child 2"), and N.T.W. ("Child 3") collectively referred as ("Children") pursuant to the Adoption Act, 23 Pa.C.S.A. §2511 (a) (1), (2), (5), (8), and (b). Neil M. Krum, Esquire, counsel for Father, filed a timely Notice of Appeal with a Statement of Errors Complained Of pursuant to Rule 1925(b).

**Factual and Procedural Background**

On December 11, 2011, DHS received a Child Protective services ("CPS") report alleging that Child 1 sustained a fractured rib and was admitted to the Children's Hospital of Philadelphia ("CHOP"). The date in which Child 1's injury occurred was unknown and no perpetrator was identified. The CPS report alleged that Child 1's parents took her to the hospital due to a fever and cough. A chest X-ray revealed that Child 1 had a left rib fracture. Child 1 was underweight and diagnosed with failure to thrive, but the cause of Child 1 failure to thrive was unclear. During hospitalization, Child 1 gained weight. On December 21, 2011, Child 1 was ready for discharge. On the same day, DHS obtained an Order for Protective Custody ("OPC") for Child 1. On December 22, 2011, Child 1 was placed in foster care thru Bethanna. On January 10, 2012, Child 1 was adjudicated dependent and committed to DHS. On January 18, 2012, In-Home Protective Services ("IHPS") were placed in the family home thru Presbyterian Children's village. On January 20, 2012, an initial Family Service Plan was developed. Father's objectives were: to meet

with the Bethanna agency on a bi-weekly basis to understand how his behavior/neglect resulted in injury to Child 1; to locate and maintain suitable housing for the family with suitable space, heat and all other operable utilities; to provide Child 1 with regular nutrition meals; and to make sure Child 1 was properly clothed. Father signed the FSP. On May 31, 2012, at another FSP meeting, the objectives for Father remained the same. Again, Father signed the FSP and attended the meeting. On January 8, 2013, Father was found in full compliance with his FSP objectives and the trial court ordered that after Father's three successful overnight visits reunification with Child 1 could take place. On January 25, 2013, Child 1 was reunified with her parents with supervision.

On March 23, 2013, DHS received a CPS report alleging that Father hit Child 2 who was two years old at the time. Child 2 had welts on his thighs and legs. Child 2 also had bruises on his arms and his eye appeared to be swollen. Father was one of Child 2's primary caregivers. On March 27, 2013, Father admitted using physical methods of discipline and that he also hit Child 1 three days earlier. Mother was present at the time of the incident. DHS escorted Child 2 and parents to CHOP, where a medical evaluation revealed handprints on Child's thighs. Subsequently, DHS obtained an OPC for Child 1 and Child 2, and placed them in the care of paternal grandmother where they currently remain. On March 28, 2013, at the Shelter Care hearing, Child 2's OPC was lifted and the temporary commitment was ordered to stand. As to Child 1, the OPC was lifted and the temporary commitment to DHS was discharged. Child 1 was re-committed to DHS. On April 9, 2013, Child 2 was adjudicated dependent, placed in foster care with paternal grandmother and his legal custody was temporally transferred to DHS. The trial court also ordered Father to have supervised visits with Child 1 and Child 2.

On April 16, 2013, Mother gave birth to a third Child. DHS implemented a safety plan at the family home. Father agreed not act dangerously or violently towards Child 3. On April 24, 2013, Father was arrested and charged with aggravated assault, unlawful restrain, serious bodily injury, endangering of welfare of Children, simple assault and recklessly endangering another person. On April 25, 2013, the criminal court issued a stay away order. On April 26, 2013, a revised FSP was developed for the family. Father's objectives were: to maintain suitable housing; to participate in a parenting capacity evaluation and follow all the recommendations; to attend domestic violence counseling; to keep visits and maintain regular contact with the Children; to maintain regular contact with the provider agency and understand how his behavior resulted in injury to his

Children; to attend ARC through key support areas identified for mental health; to attend family school and to follow recommendations; and to attend anger management. Father attended and signed the FSP. On May 1, 2013, Father posted a bail and was released from prison.

On May 21, 2013, DHS obtained an OPC for Child 3. At the Shelter Care hearing, the OPC was lifted and temporary commitment ordered to stand. On June 4, 2013, the trial court adjudicated Child 3 dependent. At the same hearing, the trial court ordered Father to have supervised visits, if the criminal court stay away order is lifted. On July 9, 2013, at a permanency review hearing, Father was found minimally compliant with his FSP objectives. Children remained in foster care with paternal grandmother. On August 19, 2013 a revised FSP was developed. Father attended and signed the FSP. Father's objectives remained the same. On October 8, 2013, at a permanency review hearing, Father was found minimally compliant with his FSP. Children continued in foster care with paternal grandmother. The trial court found that Father was attending anger management at ARC and had a psychological evaluation. Father was re-referred to domestic violence, and to the CEU for a drug screen and assessment. Father completed his Parenting Capacity Evaluation. The report noted that Father denied any responsibility for his Children injuries or history of domestic violence, and any pending criminal charges. Father did not demonstrate ability to provide safety for his Children. The report also stated that in order to be reunified with his Children, Father would need to explore and identify the role he played in his Children injuries. (DHS Exhibit 34). The trial court ordered that Father's visits must remain suspended until further order of the criminal court lifting the stay away order. On October 10, 2013, Father plead guilty to endangering the welfare of children and simple assault against a victim under 12 years of age. The criminal court ordered Father to have no contact with minors under 10 years of age, and DHS to supervise any supervised contact with minors. (DHS Exhibit 36). On December 20, 2013, a revised FSP was developed. Father attended the FSP meeting and signed the FSP. The following additional objectives were added to Father's FSP: to comply with all treatment recommendation of CEU; to sign authorization forms allowing DHS to obtain copies of evaluations and progress reports; to continue with mental health treatment and meet with a psychiatrist on a monthly basis.

In February 2014, the criminal court lifted the stay away order. On February, 11, 2014, at a permanency review hearing, Father was found in moderate compliance with his FSP. Children remained in foster care with paternal grandmother. Father was ordered to have supervised visits

with the Children at Family School. Father was re-referred to BHS for monitoring and ordered to attend Family School. Father was also re-referred to therapy to address domestic violence issues. On June 25, 2014, the FSP goal was changed to adoption. On August 11, 2014, at a permanency review hearing, Father was found to be in full compliance with his FSP. Father had suitable housing, signed releases, was attending Family School and was receiving mental health treatment. The court found that Father did not need more D&A treatment. (DHS Exhibit 26). Family Support Services Report recommended Father to continue to attend Family School on a weekly basis. However, Father attendance at Family School declined after August 11, 2014. (Father Exhibit 1). Children remained in foster care with paternal grandmother. Father was ordered to have visits with the Children once weekly at Family School. Consortium was ordered to provide DHS with Father's progress reports and treatment plans within thirty days. On November 6, 2014, DHS filed a petition for termination of Father's parental rights. On November 19, 2014, at a permanency review hearing, Children remained in foster care with paternal grandmother. On November 25, 2014, the criminal court allowed Father to have supervised contact with his Children. (DHS Exhibit 36). The trial court scheduled a contested goal change hearing for March 24, 2015. On March 24, 2015, Father's parental rights were terminated. Father's attorney filed a timely notice of appeal on April 20, 2015.

**Discussion:**

On appeal, Father raises the following issues:

1. The trial court erred in finding that DHS had neglected to make reasonable efforts to reunify Father with his Children.
2. The trial court erred in finding that DHS, and the court of Common Pleas, had prevented Father from reunifying with his Children, thereby impairing the Child-parent bond, and that the improper decisions of DHS, and the court of Common Pleas, cannot be used as a basis to terminate his parental rights.
3. Finding that DHS has met its burden to prove grounds for termination under 23 Pa.C.S.A. §2511 (a) (1).
4. Finding that DHS has met its burden to prove grounds for termination under 23 Pa.C.S.A. §2511 (a) (2)

5. Finding that DHS has met its burden to prove grounds for termination under 23 Pa.C.S.A. §2511 (a) (5)

6. Finding that DHS has met its burden to prove grounds for termination under 23 Pa.C.S.A. §2511 (a) (8).

7. Failing to find that DHS had failed to meet its burden to prove that termination would be in the Children's best interest.

8. Denying Due Process of Law to Appellant, as guaranteed by the Constitution of the Commonwealth of Pennsylvania and of the United States of America.

For ease and flow of this opinion, Father's appealed issues #1, #2, #3, #4 #5, #6, #7 #8 will be addressed as whether the trial court abused its discretion under 23 Pa.C.S.A. §2511 (a) and (b) of the Adoption Act. Under 23 Pa.C.S.A. §2511 (a), the Adoption Act provides the following:

(a) **General rule** - The rights of a parent, in regard to a child, may be terminated after a petition is filed on any of the following grounds:

(1) The parent, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, has either evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

In proceedings to involuntary terminate parental rights, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for termination. *In re Adoption of Atencio*, 539 Pa. 161, 650 A.2d 1064 (1994). To satisfy section (a) (1), the moving party must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. However, the six-month time period should not be applied mechanically; instead, the court must consider the whole history of the case. *In re B.N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004). The standard of clear and convincing evidence is defined as testimony that is so clear, direct weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitance of the truth of precise facts in issue. *In re D.J.S.*, 1999 Pa. Super. 214 (1999). In Pennsylvania, a parent's right to custody and rearing of his child is converted upon failure to fulfill his or her parental duties to the child's right

to have proper parenting and fulfillment of his or her potential in a permanent, healthy, and safe environment. *In re B. N. M.,* 856 A.2d 847, 856 (Pa. Super. 2004).

DHS filed its petition to terminate Father's parental rights on November 6, 2014. During the last six months, immediately preceding the filing of the petition, Father has continuously failed to perform his parental duties. Nonetheless, as required in *In re B. N. M.,* the court considers the entire case history. DHS developed Father's goals and objectives as part of Father's FSP, and Father was aware of his objectives. Father's objectives were to maintain housing, to attend Family School, to visit his Children, maintain contact with DHS and/or agency, to understand how his behavior resulted in injury to the Children and to comply with mental health treatment. (N.T.3/24/15, pgs. 21-22). The record established that Father completed previously developed objectives such as anger management and parenting classes at ARC, and domestic violence counselling at the Family Therapy Treatment Program ("FTTP"). (N.T.3/24/15, pg. 22).

As to Father's housing, the record revealed that Father has appropriate housing. (N.T.3/24/15, pg. 22). In regards to Father's attendance at Family School, the record established that Father's Attendance has been inconsistent. (N.T. 3/24/15, pg. 23). The trial court permanency review order from August 11, 2014, established that Father was found fully compliant with Family School attendance. (DHS Exhibit 1). However, the Family Support Services report established that Father's attendance started to decline after August 11, 2014. (DHS Exhibit 26). In fact, Father only attended 4 out of 13 appointments (N.T. 3/24/15, pgs. 23, 29, 32, 41), and stated that he felt he did not need to attend Family School anymore. (N.T. 3/24/15, pg. 39). In regard to Father's contact and visitation with his Children, the record established that a stay away order issued by the criminal court did not allow Father to establish direct contact with his Children, from April 26, 2013, until February 2014. (N.T. 3/24/15, pgs. 23-24). Although Father reads and writes English (N.T. 3/24/15, pg. 27), during the life of the stay way order, Father did not send letters or cards to Children nor did he ask DHS social workers or foster parents about his Children well-being. (N.T. 3/24/15, pg. 27). On February 11, 2014, and August 11, 2014, the trial court granted Father supervised visitation at Family School. (DHS Exhibit 25). Despite Father knowing that attending Family School was his only opportunity to visit his children (N.T. 3/24/15, pg. 23), his attendance was inconsistent. (N.T. 3/24/15, pgs. 23, 29, 32, 41), (DHS Exhibit 1).

As to Father's understanding of how his behavior resulted in the Children injuries, the record revealed that Father still does not understand how his abusive conduct caused Child 1 and 2 injuries. Father never acknowledged that his behavior caused the Children to be placed in foster care. This objective still remains incomplete (N.T. 3/24/15, pgs. 21, 25), and in the words of DHS social worker "there is still a disconnection in that area". Such a disconnection was reaffirmed by Father's comprehensive bio-psychological evaluation performed by Dr. Daniel J. Potoczniac. Dr. Potoczniac remarked that Father manifested ignorance about how the Children injuries happened and suggested that Child 2 injuries was not the result of child abuse, but simply lipstick marks that resemble physical abuse. In consequence, Dr. Potoczniac also stated that Father required psychotherapy to gain insight into the role that his anger may have played on his life and how personal responsibility should be a part of therapy. Additionally, Father's capacity evaluation clearly expressed ongoing concerns related to Father's denial of any responsibility for the injuries caused to his Children (DHS Exhibit 34). Father also denied any history of domestic violence and any responsibility for his pending criminal charges. (DHS Exhibit 34). In addition, Father's objective to provide any documentation verifying his attendance at all the services still remains incomplete. (N.T. 3/24/15, pgs. 38-39).

Father's repeated inconsistent compliance continued for at least six months prior to the filing of the termination petition. Despite being found fully compliant by the trial court on August 11, 2014, Father has not achieved his FSP goals during the life of the case. He is still unable to understand how his behavior resulted in the Children injuries. Furthermore, despite having alternatives ways to contact his Children, such as sending letters and cards, Father failed to maintain contact with them. Hence, Father's attendance to supervised visitation at Family School declined after August 11, 2014. (DHS Exhibit 1). As a result, the trial court found that Father evidenced a settled purpose of relinquishing his parental claim, and refused or failed to perform parental duties during the six-month period immediately preceding the filing of the petition as required by the Adoption Act, 23 Pa.C.S.A. §2511 (a) (1). DHS has meet its burden of clear and convincing evidence.

The trial court also terminated Father's parental rights under the Adoption Act at 23 Pa.C.S.A. §2511(a) (2). This section of the Adoption Act includes, as a ground for involuntary termination of parental rights, the repeated and continued incapacity, abuse, neglect or refusal of the parent that causes the child to be without essential parental care, control or subsistence necessary for his

physical or mental well-being; and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. This ground is not limited to affirmative misconduct. It may include acts of refusal to perform parental duties but more specifically on the needs of the child. *Adoption of C.A.W.*, 683 A.2d 911, 914 (Pa. Super. 1996).

The record established that Father has been unable to provide his Children with the essential parental care, control, and subsistence necessary for Child 1, Child 2 and Child 3's mental and physical well-being since December 22, 2011, March 27, 2013, and April 2013, respectively. Father failed to understand how his behavior resulted in his Children injuries, to maintain contact with his Children, to provide for Children daily needs and inquire about the Children needs. During the entire time the criminal court stay away order was in place, Father never inquired about the well-being of his Children. Father never sent letters or birthday cards to the Children. (N.T. 3/24/15, pg. 27). Father plead guilty to endangering the welfare of Children and simple assault against a victim under 12 years of age. Furthermore, Father did not comply with the Family School attendance and did not provide DHS with the documentation verifying his compliance with DHS services. Father has been unable to remedy the conditions that have led the Children to remain in foster care for forty, twenty-five and twenty-three months, respectively. As a result, more than four years have not been enough to achieve his FSP goals. Father will remain on probation until, at least, the end of 2016, and furthermore, he was given a sentencing condition of having no unsupervised contact with minors 10 years of age or younger. (DHS Exhibit 36). Under Father's current circumstances, he is unable to remedy the causes of his incapacity in order to provide Children with essential parental care, control or subsistence necessary for their physical and mental well-being. After forty, twenty-five and twenty-three months in foster care, Children need permanency, which Father cannot provide at this moment. Consequently, DHS has met its burden under §2511 (a) (2) of the adoption act at 23 Pa.C.S.A.

The trial court also granted DHS' request for termination of parental rights under 23 Pa.C.S.A. §2511 (a) (5), whereby a child may be removed, by court or voluntary agreement, and placed with an agency at least six months, if conditions which led to the placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services reasonably available to the parent are not likely to remedy the conditions leading to placement, and/or termination best serves the child's needs and welfare. DHS, as a child and youth

agency, cannot be required to extend services beyond the period of time deemed as reasonable by the legislature or be subjected to herculean efforts. A child's life cannot be put on hold in hope that the parent will summon the ability to handle the responsibilities of parenting. *In re J.T.*, 817 A.2d 509 (Pa. Super. 2001). As a consequence, Pennsylvania's Superior Court has recognized that a child's needs and welfare requires agencies to work toward termination of parental rights when a child has been placed in foster care beyond reasonable temporal limits and after reasonable efforts for reunification have been made by the agency, that have resulted unfruitful. This process should be completed within eighteen months. *In re N.W.*, 851 A.2d 508 (Pa. Super. 2004).

The record indicated that Father has been unable to assume his parental duties since when the three Children were placed in foster care on December 22, 2011, March 27, 2013, and April 2013, respectively. Accordingly, Father's incapacity and reluctance to assume his parental responsibilities throughout the entire life of the case has led the Children to remain in foster care. Child 1, Child 2 and Child 3 have been in foster care for forty, twenty-five and twenty-three months, respectively. Child 1 has been in care twice after previously being reunified with his Father. Father is not ready to assume his parental duties any time soon. Father will be on probation until, at least, the end of 2016, and has a sentencing condition of having no unsupervised contact with minors less than 10 years of age. (DHS Exhibit 36). Consequently, Father cannot have unsupervised contact with his Children and it is unknown when unsupervised contact with his Children will be allowed. (N.T. 3/24/15, pgs. 26-27). It is clear that after four years, Father has failed to understand how his behavior resulted in Child 1's injuries and placement in foster care. Father has been given more than ample time to place himself in a position to be a parent to these Children, but he has failed to do so. On July 9, 2013, October 8, 2013, February, 11, 2014, August 11, 2014, November 19, 2014, and March 24, 2015, the trial court found that DHS made reasonable efforts to reunify Father and Children, and Father has been made aware of his FSP objectives. It is in the best interest of the Children to have a stable, nurturing, and permanent environment. Father is not a safe appropriate resource for his Children. Father has denied any responsibility for his Children injuries as per Father parenting Capacity Evaluation. (DHS Exhibit 34). As of the termination hearing date, Father cannot care on a full time basis for his Children. He is unable to do it now or six months in the future. He cannot even have unsupervised contact with them or overnight visits. (N.T. 3/24/15, pgs. 26-27). Conditions that led to the placement of the Children

continue to exist, and Father cannot remedy them within a reasonable period of time. DHS has met its burden under §2511 (a) (5) of the Adoption Act.

As to §2511 (a) (8) of 23 Pa.C.S.A., DHS also met its burden by clear and convincing evidence that Children have been out of Father's care for twelve months or more, and the conditions leading to the placement still exist, and termination would best serve the needs and welfare of the Children. Child 1, Child 2 and Child 3 have been continuously under DHS custody for a period of forty, twenty-five and twenty-three months, respectively. The conditions that led to the Children's placement still exist. Despite the good faith efforts of DHS to make services available, it is in the best interest of the Children to terminate Father's parental rights.

As to the second element of section 2511 (a) (8) that the conditions which led to the children's removal continue to exist, DHS has also met its burden. *In re: Adoption of K.J.,* 938 A.2d 1128, 1133 (Pa. Super. 2009). A termination of parental rights under section 2511 (a) (8) does not require the court to evaluate a parent's willingness or ability to remedy which initially caused placement or the availability or efficacy of DHS services offered to Father. In this case, the trial court found that Father had failed to remedy the conditions that led to the removal of the Children, particularly his failure to understand how his behavior resulted in injury to the Children. (N.T. 3/24/15, pgs. 21-22). The record established unambiguously that Father has not completed his FSP goals. (N.T. 3/24/15, pgs. 23, 25, 29, 32, 39, 41). Father plead guilty to endangering the welfare of children and simple assault against a victim under 12 years of age, his own son. Father is not a safe appropriate resource for his Children. Father is still on probation, and has a sentencing condition of having no unsupervised contact with minors less than 10 years of age (DHS Exhibit 36). Father cannot have unsupervised contact with his Children or overnight visits. (N.T. 3/24/15, pgs. 26-27). Father continues to deny any history of domestic violence and any responsibility for the injuries caused to his Children. (DHS Exhibit 34). Even when Father had an opportunity to visit with his Children at Family School, Father's attendance was inconsistent. (N.T. 3/24/15, pgs. 23, 29, 32, 41), (DHS Exhibit 1).

As to the third element of section 2511 (a) (8), the party seeking termination must also prove by clear and convincing evidence that the termination is in the best interest of the child. The best interest of the child is determined after consideration of the needs and welfare of the child such as love comfort, security and stability. *In re Bowman,* 436 Pa. Super. 647, A.2d 217 (1994). See also

*In re Adoption of T.T.B.*, 835 A.2d 387, 397 (Pa. Super. 2003). The Children have been in their respective pre-adoptive home for a long time (N.T. 3/24/15, pgs. 10-13). The Children are in a safe home and stable environment with foster parent providing for all their needs. (N.T. 3/24/15, pgs. 28-29). The Children need permanency. Termination of Father's parental rights and adoption would best serve the needs and welfare of the Children. (N.T. 3/24/15, pg. 27). The testimony of the DHS witnesses was unwavering and credible.

Pursuant to 23 Pa.C.S.A. §2511 (b), the trial court must also consider what, if any bond exists between parent and child. *In re Involuntary Termination of C.W.S.M. and K.A.L.M.*, 839 A.2d 410, 415 (Pa. Super. 2003). The trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship". *In re Adoption of T.B.B.*, 387, 397 (Pa.Super.2003). In assessing the parental bond, the trial court is permitted to rely upon the observations and evaluations of social workers. *In re K.Z.S.*, 946 A.2d 753,762-763 (Pa. Super. 2008). In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis depends on the circumstances of the particular case." *Id.* at 762-63. Also, under 23 Pa.C.S.A. §2511 (b), the rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical, if found to be beyond the control of the parent.

The record established that the Children will not suffer any irreparable harm by terminating Father's parental rights (N.T. 3/24/15, pg. 29) and it is in the best interest of the Children to terminate Father's parental rights. (N.T. 3/24/15, pg. 27). As to the existence of a parent/child bond between Father and Children, the trial court considered that Child 1 was born on July 24, 2011 and was initially placed in foster care on December 22, 2011, when she was five-months old. Child 1 has been in foster care most of her life except for when she was reunified with her Father for two months from January 25, 2013, to March 23, 2013. Child 2 was born on June 22, 2010, and was placed in foster care with parental grandparents on March 23, 2013, when he was two years and eight months and still remains under paternal grandparents care. Lastly, Child 3 was born on April 16, 2013, and placed with paternal grandparents on May 24, 2013, when he was one month old. DHS witness testified that there is no bond between Father and Children. As a matter of fact, it is a negative bond. (N.T. 3/24/15, pg. 35). The trial court found the witness to be credible. Foster parents meet all of the needs of the Children, such as getting them dressed, attending medical

appointments, and getting up in the morning. (N.T. 3/24/15, pgs. 21, 29). There is a strong connection between the Children and the foster parents. (N.T. 3/24/15, pg. 19). Children have spent most of their lives in foster care due to Father's own actions. In fact, Child 3 has never lived with his Father. (N.T. 3/24/15, pgs. 21). Father's stay away order and the criminal court restriction prohibiting Father from unsupervised contact with his Children has been an obstacle for Father to maintain a close relationship with them, but it is of Father's own creation. Additionally, when Father has an opportunity to maintain supervised contact with his Children at Family School, he lacked the interest and consistency to attend his visits. Father feels he does not need to attend Family School. (N.T. 3/24/15, pgs. 23, 32, 34, 38-39). Father's parental rights are not being terminated on the basis of environmental factors. Children have been in foster care for too long and need permanency.

**Conclusion:**

For the aforementioned reasons, the court finds that DHS met its statutory burden by clear and convincing evidence regarding the termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511 (a) and (b). The court also finds that it will not cause irreparable harm to the Children to sever any bond, and it is in the best interest of the Children, since it would best serve their emotional needs and welfare. Accordingly, the order entered on March 24, 2015, terminating the parental rights of Father V.W. should be affirmed.

By the court

Joseph Fernandes, J.

**IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
FAMILY COURT DIVISION**

In re: In the Interest of L.Q.W., V.M.W., and N.T.W.

APPEAL OF: V.W. Father

: CP-51-DP-0002514-2011
: CP-51-DP-0000637-2013
: CP-51-DP-0001059-2013
:
: 51-FN-004719-2011
:
: 1229 EDA 2014

PROOF OF SERVICE

I hereby certify that this court is serving, today Thursday, June 25, 2015, the foregoing Opinion, by regular mail, upon the following person(s):

Meagan Mirtenbaum, Esquire
City of Philadelphia Law Dept.
Office of the City Solicitor
1515 Arch Street, 16th Floor
Philadelphia, Pennsylvania 19102-1595
Attorney for D.H.S.

Lisa Marie Visco, Esquire
2442 75th Ave.
Philadelphia, PA 19138
Child Advocate

Neil M. Krum, Esquire
1518 Walnut Street, Suite 401
Philadelphia, PA 19102
Attorney for Father

BY THE COURT:

Honorable Joseph L. Fernandes